In the Matter of ABINGDON REALTY CORPORATION, Bankrupt.

Bankruptcy No. 467–72.

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

March 23, 1982.

Samuel M. Greenbaum, Washington, D. C., Bruce Goldstein, Arlington, Va., for the bankrupt.

Gerald M. O'Donnell, Alexandria, Va., trustee.

Roy B. Zimmerman, Alexandria, Va., for trustee.

Michael J. Kearns, Dept. of Justice, Washington, D. C., Thomas Berger, Asst. U. S. Atty., Justin Williams, U. S. Atty., E. D. Va., Alexandria, Va., for the I.R.S.

Ronald L. Walutes, Annandale, Va., for Docter, Docter & Salus.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

On September 9, 1981, a hearing was held before this Court to determine whether the Internal Revenue Service ("IRS") and Gerald M. O'Donnell, Trustee in Bankruptcy ("trustee"), ever reached agreement concerning the compromise of a proof of claim filed by the IRS in the amount of $1,859,-609.61 and, if such an agreement had been reached, the terms of that agreement.

The issue for determination is whether a written agreement reached by other parties and later expressly adopted by the trustee, but recited by him to the Court with a mistake as to its material terms, is never-

theless binding upon the trustee and the parties according to its original, written terms.

This case is before the Court, having been remanded from the United States District Court for the Eastern District of Virginia, to reconsider whether prior to the entry of this Court's order of June 14, 1977, disallowing the claim of the IRS in the amount of $1,859,609.61, there was an actual compromise of said claim and, if so, what the terms were of that compromise.

The IRS claim was a claim entitled to priority under Section 64(a)(5) of the Bankruptcy Act of 1898 as a claim of the United States other than for taxes. [11 U.S.C. § 104(a)(5).] During the summer of 1974, while the bankrupt corporation's amended Plan of Arrangement was under consideration by this Court, counsel for the Creditors' Committee entered into negotiations with the IRS in an attempt to compromise the government's claim. At a hearing held on November 5, 1974 on a related matter, counsel for the Creditors' Committee stated orally that as a result of these negotiations "the unsecured creditors" would take 65% of their claims (which were estimated to be about $120,000.00) with the balance of the funds available for distribution going to the IRS in compromise of its priority claim.

Counsel for the IRS also was present at the November 5, 1974 hearing and assented to the above terms as reflecting the agreement reached.

Due to various trials and appeals, primarily related to the sale of the building owned by the bankrupt, the question of compromise did not arise again for more than two years. In January 1977, the trustee contacted the IRS regarding the compromise which had been presented orally to the

Court on November 5, 1974. By letter of January 28, 1977, the IRS reaffirmed to the trustee the terms of the agreement previously made with the attorney for the Creditors' Committee. The letter states that under the agreement "the unsecured creditors" were to receive "65 percent of their claims."

Although the January 28, 1977 letter does not so state, there is a clear inference that the IRS expected to receive the balance of the funds available for distribution after payment of approximately $65,000.00 to "the unsecured creditors."

On June 3, 1977, the trustee submitted to the Court an application for approval of the compromise reached between the IRS and counsel for the Creditors' Committee. The application asserts that the agreement for which approval was sought is the same one "set forth upon the attached letter from ... the Service." In paraphrasing the agreement in the application itself, however, the trustee misstated the terms as allowing "payment of *65% of funds available for distribution* to general creditors to these creditors and the balance, or 35% of said funds" to the IRS. (Emphasis added.)

Although notified by the Court[1] of the June 7, 1977 hearing to consider the compromise of the IRS claim and the corresponding disallowance of the original claim for $1.8-million, the IRS failed to appear or otherwise contest the matter until eight months later in February 1978. In the meantime, this Court, seven days after the hearing, on June 14, 1977, entered an order approving the compromise as erroneously stated by the trustee. In November 1977, this Court approved the bankrupt's plan of distribution, drawn up according to the

1. According to the Clerk's certificate of mailing, five (5) notices of the June 7, 1977 hearing were sent to the IRS and two to the offices of the U.S. Attorney for Alexandria. Of the five notices sent to the IRS, three were addressed to individual attorneys in the Service's office of regional counsel. In its motion for reconsideration, the IRS averred that it did not receive either a notice of the hearing or a copy of the subsequent order of June 14, 1977. Yet, one of the addressees of the notice, Robert E. John-

son, later admitted to the trustee that a copy of the notice of the hearing was in his file, apparently having been put there without his knowledge. The IRS also argued that the only notice received by the Service was the one addressed to the "Special Procedures Staff" which had no responsibility for the case. Neither of these statements explains the disappearance of the other three notices, including the one addressed to Mr. Johnson's boss, David Price.

same erroneously-stated terms regarding compromise of the IRS claim, and the trustee disbursed the funds. As a result, the IRS received $141,061.59 which was 35 percent of the $420,423.50 available for distribution. General creditors received 100 percent of their claims, rather than 65 percent.

The IRS appealed this Court's decision not to reconsider its order disallowing the full $1.8-million claim as having been compromised. The District Court reversed and remanded for the Court to determine whether there was, in fact, a compromise of the IRS claim and, if there was, the terms of that agreement. At a hearing held September 9, 1981, counsel for the trustee stated that the trustee had misinterpreted the agreement in his 1977 representations to the Court. Counsel for the trustee stated further that, having recently reviewed the relevant documents, the trustee believed the IRS to be correct in its assertion that the agreed terms were that the amount to be paid to general creditors was 65 percent of their claims, not 65 percent of the funds available for distribution. It is clear that if the plan of distribution, in providing for "general creditors," had excluded related creditors and paid only 65 percent on the approximately $100,000.00 in claims from outside creditors, the IRS would have realized more than $350,000.00 from the distribution rather than $141,000.00 [2].

■ As a general principle, one who accepts a written agreement or contract is presumed to know and assent to its contents in the absence of fraud, misrepresentation or other wrongful conduct by another contracting party. Further, one who accepts a written contract, either by signing it or by other means, will normally be bound by its terms. Ignorance or misunderstanding of the terms will not ordinarily

affect the liability of such a person under the contract. *Upton v. Tribilcock*, 91 U.S. 45, 23 L.Ed. 203 (1875); *Bailey v. Lisle Manufacturing Co.*, 238 F. 257, 267–68 (8th Cir. 1916); *Ashby v. Dumouchelle*, 185 Va. 724, 40 S.E. 493 (1946).

■ The trustee here, by applying to this Court for approval of the agreement between the IRS and the Creditors' Committee, adopted and thus accepted that agreement. There is no evidence, nor has there been any suggestion, of misrepresentation as to the contents of the agreement by the IRS or the Creditors' Committee. Therefore, the terms of the compromise agreement accepted by the trustee were that the "unsecured creditors" were to receive 65 percent of the amount of their claims, with the balance of the funds available for distribution to be paid to the IRS in compromise of its priority claim.

For the foregoing reasons, as well as those previously set forth in the record, this Court finds that the government's position will be sustained.

The agreement reached between the Creditors' Committee and the IRS is clear and unambiguous as to its terms regarding the percentage that general creditors were to receive on their claims. The IRS, in 1974, compromised its original $1.8-million claim to whatever would remain after payment of 65 percent of the amount of the claims of the bankrupt's "unsecured creditors." The intent is uncertain, however, as to which creditors were to be included in the category of "unsecured creditors." Thus, further proceedings will be required to determine whether the term "unsecured creditors" was meant to embrace all general creditors of the estate or only those unrelated to the bankrupt.

---

**2.** The sum of $167,270.83 was paid to Docter, Docter & Salus as assignee of James Polk Corporation (a related corporation of the bankrupt) and is the subject of a related action to determine, *inter alia*, the validity of the note underlying the IRS claim against the bankrupt estate and whether certain related creditors are to share in the distribution or be subordinated to the IRS. The sum of $16,045.00 was paid to

Louis Pomponio, Sr., an individual related to the bankrupt corporation.

On November 22, 1977, this Court ordered Docter, Docter & Salus as assignee of James Polk Corporation and Louis Pomponio, Sr., to surrender to the trustee the proceeds paid them under the November 18, 1977 Order of Distribution.

In addition, the validity of the IRS claim against the bankrupt estate has now been challenged in response to the Service's attempt to recover funds distributed to others as a result of the trustee's misstating to this Court the terms of the compromise agreement. Thus, this Court's determination here goes no further than to rule on the terms agreed upon between the IRS and the Creditors' Committee and accepted by the trustee.

An appropriate Order will enter.